UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DEFENDERS OF WILDLIFE,              )
                                    )
            Plaintiff,              )
                                    )
     v.                             )   Civil Action No. 04-1832 (PLF)
                                    )
UNITED STATES BORDER PATROL, et al.,)
                                    )
            Defendants.             )
_____ )


OPINION

        This Freedom of Information Act case is before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment and on plaintiff's cross-motion for summary judgment.[1] After careful consideration of the parties' papers and the attached exhibits and declarations, the Court concludes that the Vaughn Index submitted by the Department of Homeland Security ("DHS") and accompanying declarations are inadequate for the Court to resolve either party's motion on the merits. It therefore will order DHS to supplement the Vaughn Index and declarations as described below.

---

[1] The Court considered the following papers in connection with this matter: the First Amended Complaint ("Compl."); Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def. Mot."); Plaintiff's Cross-Motion for Summary Judgment ("Pl. Mot."); Defendants' Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def. Rep."); Plaintiff's Reply in Support of Cross-Motion for Summary Judgment ("Pl. Rep."); and DHS's Amended Vaughn Index ("Vaughn Index") and its accompanying declarations.

I.  BACKGROUND

Plaintiff Defenders of Wildlife is a Washington, D.C. based nonprofit corporation whose mission is to preserve wildlife and emphasize appreciation and protection for all species in their ecological role within the natural environment through education and advocacy.  See Compl. ¶ 3.  On April 28, 2004, plaintiff sent a FOIA request to the Tucson and Yuma Sectors of the United States Border Patrol ("USBP") and the Citizenship and Immigration Services ("CIS").  See Pl. Mot., Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute ("Pl. Facts") ¶ 11.[2]  Plaintiff requested six categories of records concerning the agencies' adherence to environmental laws in relation to the Arizona Border Control Initiative, documents produced pursuant to the Endangered Species Act, and correspondence with other federal agencies and Congressional representatives.  See id.  On May 4, 2004, the California CIS office advised plaintiff that if any records existed they would be maintained at the Bureau of Customs and Border Protection ("CBP") in Washington, D.C.  See id. ¶ 12.  On May 12, 2004, plaintiff submitted a separate FOIA request to CBP for the same categories of information as in the original request.  See id. ¶ 14.  Having received no records in response to these requests, plaintiff filed suit in this Court on January 3, 2005 alleging that USBP and CBP violated the FOIA because they had not responded to plaintiff's request and they had not conducted an adequate search for records.  See Compl. ¶¶ 34, 37, 40, 61.

---

[2]     Plaintiff also submitted FOIA requests to the Department of the Interior, the National Park Service, the United States Fish and Wildlife Service, and the United States Forest Service.  Initially, it also challenged the sufficiency of those agencies' responses in its complaint.  Over the course of the litigation, however, plaintiff has determined that its claims against those agencies have been satisfied and are no longer at issue.  See Pl. Reply at 1.  Its claims against the Department of Homeland Security, the United States Border Patrol, and the Bureau of Customs and Border Protection remain viable.  Id.

On August 15, 2005, CIS provided some responsive records to plaintiff on behalf of USPB as well as a Vaughn Index identifying records that were withheld. See Pl. Facts ¶ 13. On November 29, 2005, the Department of Homeland Security, of which USBP and CBP are components, filed an amended Vaughn Index in support of a motion to dismiss or, in the alternative, for summary judgment. The sufficiency of that Vaughn Index and the adequacy of the agencies' searches are at issue in the pending motions.[3]

## II. STANDARD OF REVIEW

*A. The Freedom of Information Act*

The fundamental purpose of the FOIA is to assist citizens in discovering "*what their government is up to.*" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (emphasis in original). The FOIA strongly favors openness, as Congress recognized in enacting it that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); see also Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny"). As such, "disclosure, not secrecy, is the dominant objective of the Act." Dep't of the Air Force v. Rose, 425 U.S. at 361.

---

[3] Resolution of this matter turns on the sufficiency of DHS's Vaughn Index and accompanying declarations. Accordingly, the Court will treat defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as one for summary judgment. See FED. R. CIV. P. 12(d).

*B. Summary Judgment*

The Court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007); Farrugia v. Executive Office for United States Attorneys, Civil Action No. 04-0294, 2006 WL 335771 at *3 (D.D.C. Feb. 14, 2006). In a FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003). An agency must demonstrate that "each document that falls within the class requested either has

been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978); see also Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Hertzberg v. Veneman, 273 F. Supp. 2d at 74.

### III.  DISCUSSION

DHS has produced 602 pages of records responsive to plaintiff's FOIA request in full, has withheld 853 pages of potentially responsive records in full, has withheld 189 pages of potentially responsive records in part, and has referred 255 pages of potentially responsive records to other agencies. See Vaughn Index, Declaration of Magda S. Ortiz ("Ortiz Decl.") ¶ 6. Plaintiff challenges the adequacy of this production on several grounds, summarizing its complaints as follows:

> The Vaughn index is legally insufficient, and the agencies have not carried their burden to justify withholdings under exemption 5's deliberative process privilege and exemption 7(E). The agencies have additionally failed to segregate releasable information. Finally, DHS has not demonstrated that searches have been conducted and records provided for all DHS agencies, and the searches that have been conducted were not reasonable.

Pl. Mot. at 2.[4] The Court agrees with plaintiff that DHS's Vaughn Index and the accompanying declarations are legally insufficient — the Court is unable to determine whether DHS's claimed exemptions are valid, whether it has met its burden to reasonably segregate information for release, and whether the agencies involved have conducted adequate searches for responsive records.

---

    [4]    Plaintiff does not challenge DHS's reliance on exemptions 6 and 7(C) to redact individuals' names or its reliance on exemption 2 to withhold information such as telephone numbers, email addresses, fax numbers and other document numbers. See Pl. Mot. at 2 n. 1.

*A. The Vaughn Index*

Under the FOIA, an agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. See 5 U.S.C. § 552(b); see also Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 494 (1994). The agency bears the burden of justifying any withholding. See Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d at 74. To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called "Vaughn Index," sufficiently detailed affidavits or declarations, or both. Id.; see also Oglesby v. Dep't of the Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996); Vaughn v. Rosen, 484 F.2d at 827-28. The Vaughn Index and/or accompanying affidavits or declarations must "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)). While there is no set form for a Vaughn Index, the agency should "disclose as much information as possible without thwarting the exemption's purpose." Hall v. Dep't of Justice, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (quoting King v. Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987)).

DHS's Vaughn Index is lengthy, identifying each document by page number and providing three categories of information: a brief description of the document, the exemption(s) cited, and the content of the withheld portion and the basis for its withholding. The Vaughn Index, however, systematically fails to identify relevant information such as the originating

component agency, the author, and frequently the recipient(s) of the document.  As the court of appeals recently has explained, details such as these are necessary "to enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions."  Judicial Watch, Inc. v. FDA, 449 F.3d at 150.

DHS's descriptions of the documents withheld and the reasons for withholding them are unduly vague and general.  For example a typical entry describes a document as "SW Border Coordination Meeting, December 2, 2003," and the agency states only:

> Three pages Withheld in Full.  Exemption (b)(5) was cited to protect the deliberative process privilege as it is applied to pre-decisional material or discussions, the general purposes of which [are] to encourage open frank discussions among personnel.  Exemptions (b)(6) and (b)(7)(C) to protect personal privacy interests, and the names of government employees and law enforcement personnel, which could reasonably be expected to constitute a clearly unwarranted invasion of personal privacy.  The document is a summary of meeting notes on border issues.

Vaughn Index, Document #1 at 10-11.  "[B]road categorical descriptions" such as these are inadequate to allow "a reviewing court to engage in a meaningful review of the agency's decision."  Hall v. Dep't of Justice, 552 F. Supp. 2d at 27 (citing Oglesby v. Dep't of the Army, 79 F. 3d at 1176).

In addition to failing to provide adequate detail about the identity and contents of the documents, the Vaughn Index provides only bare legal conclusions regarding the exemptions relied upon by DHS to justify withholding.  With respect to one document withheld under exemption 5, for example, the Vaughn Index states only: "Email with Plan Attached/charts & maps" for which ten pages were withheld in full based on various exemptions, including exemption 5.  See Vaughn Index, Document #1 at 27.  The only explanation for this withholding

under exemption 5 is that it "was cited to protect the deliberative process privilege as it is applied to pre-decisional material or discussions, the general purposes of which to encourage open frank discussions among personnel. . . . The document is an email with an attached plan." See id.[5] This explanation is typical. In attempting to justify withholding another document, a five page Arizona Border Control Plan under exemption 5, because it "pertains to immediate access issues," the agency explains only that it was "protect[ing] the deliberative process privilege as it is applied to pre-decisional material or discussions, the general purposes of which [are] to encourage frank discussions among personnel." Id., Document #1 at 17. There is no explanation of how any of the documents are pre-decisional or deliberative or what deliberative process is involved. It simply is not sufficient to state that all withholdings relate to "a decision or decisions on how best to implement the Arizona Border Control Initiative." See Ortiz Decl. ¶ 15.

      DHS's explanations as to withholdings based on exemption 7(E) are similarly summary. When it describes the basis for withholding in part 25 pages of an "Agenda and PowerPoint presentation, dated 2/18/04," for example, the Vaughn Index states "exemption (b)(7)(E) was cited to protect information that would disclose techniques and procedures for enforcement investigations and prosecutions and release of this information would risk circumvention of the law. These documents consist of a review of meeting minutes, key points

---

[5] Exemption 5 excludes from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption includes documents traditionally afforded protection "pursuant to evidentiary privileges in the civil discovery context,' including those covered by the attorney-client, attorney work product, and deliberative process privileges." Long v. Dep't of Justice, 450 F. Supp. 2d 42, 59 (D.D.C. 2006) (quoting Dow Jones & Co. v. Dep't of Justice, 917 F.2d 571, 573 (D.C. Cir. 1990)).

and action items." See Vaughn Index, Document #2 at 1.[6] Other than accepting the agency's summary conclusion on its face or reviewing the document itself, the Court has no basis to determine, as it must under exemption 7(E), whether "(1) the information was 'compiled for law enforcement purposes,' and (2) release of the information 'could reasonably be expected to risk circumvention of the law.'" Blanton v. Dep't of Justice, 63 F. Supp. 2d 35, 49 (D.D.C. 1999) (citing FBI v. Abramsom, 456 U.S. 615 (1982)).

      The Court concludes that DHS has not met its burden to "disclose as much information as possible" in its Vaughn Index, Hall v. Dep't of Justice, 552 F. Supp. 2d at 27, and that the explanations it has provided are inadequate to permit the Court to determine whether DHS is justified in withholding hundreds of pages of potentially responsive documents based on exemptions 5 and 7(E). An agency's claims, in affidavits, declarations or a Vaughn Index may not "merely recite the statutory standards." Carter v. United States Dep't of Commerce, 830 F.2d 388, 392-393 (D.C. Cir. 1987). Where the agency's affidavits or declarations merely "parrot the language of the statute and are drawn in conclusory terms," as they are here, the Court's ability to conduct its own review of the agency's determinations is severely frustrated. Id. at 393 (quoting Allen v. CIA, 636 F.2d 1287, 1298 (D.C. Cir. 1980)); see also Senate of Puerto Rico ex rel. Judiciary Comm. v. Dep't of Justice, 823 F.2d 574, 584 (D.C. Cir. 1987).

      DHS's Vaughn Index is equally deficient in attempting to justify its decisions to withhold many documents in full rather than releasing segregable portions. If a record contains

---

[6] Exemption 7(E) exempts "records or information compiled for law enforcement purposes [that] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. 552(b)(7)(E). See, e.g., Long v. Dep't of Justice, 450 F. Supp. 2d at 79.

information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the nonexempt portions are inextricably intertwined with exempt portions. See Salas v. Office of the Inspector Gen., 577 F. Supp. 2d 105, 112-113 (D.D.C. 2008) (citing Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022 (D.C. Cir. 1999)); 5 U.S.C. § 552(b). To withhold the entirety of a document, DHS "must demonstrate [to the Court] that it cannot segregate the exempt material from the non-exempt and must disclose as much as possible." Hertzberg v. Veneman, 273 F. Supp. 2d at 90 (citing Kimberlin v. Dep't of Justice, 139 F.3d at 949-50). DHS has made no such showing here, either in its Vaughn Index or in the declarations it submitted.

"[A] blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability. . . Rather, for *each* entry the defendant is required to 'specify in detail which portions of the document are disclosable and which are allegedly exempt.'" Wilderness Soc'y v. Dep't of Interior, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (quoting Animal Legal Defense Fund v. Dep't of the Airforce, 44 F. Supp. 2d 295, 301 (D.D.C. 1999)) (emphasis in original). DHS has not done this. Rather, it simply states that as to all of the withheld documents, "all information withheld . . . is not reasonably segregable because it is so intertwined with protected material that segregation is not possible." Ortiz Decl. ¶ 25. This explanation is insufficient, because it "does not 'show with reasonable specificity why the documents cannot be further segregated' and additional portions disclosed." Hertzberg v. Veneman, 273 F. Supp. 2d at 90-91 (citing Armstrong v. Executive Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996)). For all of these reasons, the Court has determined that DHS's Vaughn Index is legally insufficient.

*B.  Adequacy of Search*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" <u>Valencia-Lucena v. United States Coast Guard</u>, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting <u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)); <u>see also</u> <u>Campbell v. Dep't of Justice</u>, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information).  The agency bears the burden of showing that its search was calculated to uncover all relevant documents.  <u>Steinberg v. Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 185 F. Supp. 2d 54, 63 (D.D.C. 2002).  While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982), they must "describe what records were searched, by whom, and through what processes," <u>Steinberg v. Dep't of Justice</u>, 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." <u>Wilderness Soc'y v. Dep't of the Interior</u>, 344 F. Supp. 2d at 20 (citing <u>Weisberg v. Dep't of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983); <u>see also</u> <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 185 F. Supp. 2d at 63.

While the defendant agencies have submitted numerous declarations in an attempt to meet their burden with regard to the adequacy of the searches, these declarations do not leave either the plaintiff or this Court confident that the agencies have conducted searches reasonably calculated to uncover all relevant documents.  The declarations make conclusory statements that

the searches were adequate, but fail to provide necessary details for the Court to determine if this was in fact the case.

Joseph Gleason, who submitted a declaration describing the search conducted by USBP's Tuscon Sector, states: "I directed the search for records in a manner reasonably calculated to uncover all relevant documents.  Additionally, to the best of my knowledge, those assigned to conduct the search, conducted the search in good faith using methods that [were] reasonably expected to produce the information requested." See Vaughn Index, Declaration of Joseph Gleason ¶ 5.  The only specific detail that Mr. Gleason gives about the scope of the search or the methods used is a statement that he assigned specific categories of plaintiff's request to various employees, and that "I directed that these searches be conducted for information as it pertains to the Tuscon Sector." See id. ¶ 8.  He provides no description of what methods were used to conduct the searches.

Arthur C. Angulo, in describing the search conducted by the USBP Yuma Sector Headquarters, states: "I checked my own files for any documents that might have been responsive to plaintiff's FOIA request. . . . [T]he central files at Yuma Sector Headquarters here in Yuma were searched and no responsive documents were found. . . . Frank Geary, the Sector Facility Manager checked his files for any documents that might have been responsive. . . ." See Vaughn Index, Declaration of Arthur C. Angulo ¶¶ 7-9.  Mr. Angulo does not explain why these locations were the most likely to contain responsive records, why they were selected for searches and not other files, what specific files were searched or what search methods were used.

With regard to its search, CBP simply states that "the Office of Field Operations [a component of CBP] realized that they did not possess any responsive records. . . , " but the

declarant does not explain how CBP came to this conclusion or whether the conclusion was based on an initial search for documents or some other basis. See Def. Rep., Declaration of Joanne Roman Stump ("Stump Decl.") ¶ 10. The declarations submitted by representatives of USBP and CBP provide virtually no detail about the agencies' filing systems, the likely location of responsive documents within the agencies, the rationale for searching certain locations and not others (or not conducting a search at all in the case of CBP), or the search methods used.

The declaration submitted by Elizabeth Withnell, on behalf of DHS, is much better. She explains that upon receipt of plaintiff's FOIA request, in addition to forwarding the request to CBP, DHS searched for responsive records in various locations. See Vaughn Index, Declaration of Elizabeth Withnell ¶¶ 5-8. Specifically, DHS searched its Office of Legislative Affairs, its Executive Secretariat and its Office of Safety and Environmental Programs for responsive records. See id. ¶¶ 6-8. The Court has no reason to doubt that DHS made appropriate decisions in determining where to conduct its search. The declaration is deficient, however, in that it gives no details about the scope or methods of the searches conducted in these three locations. Ms. Withnell does not explain whether searches were made in these offices' paper files, electronic files, or both. Nor does she provide any details about the offices' filing methods or the search terms used. The declaration simply states that searches were conducted. See id.

In sum, the declarations submitted by the defendants do not satisfy their burden to show that the searches were "reasonably calculated to uncover all relevant documents" because they are not "reasonably detailed . . . [and do not set] forth the search terms and the type of search performed. . . ." Wilderness Soc'y v. Dep't of the Interior, 344 F. Supp. 2d at 20 (citations

omitted).  See also Friends of Blackwater v. Dep't of Interior, 391 F. Supp. 2d 115, 120-21 (D.D.C. 2005); Judicial Watch v. Dep't of Justice, 185 F. Supp. 2d at 64-65.

Separate and apart from these deficiencies, the declaration submitted by Joanne Stump for CBP raises broader concerns.  It suggests that DHS, USBP, CBP and CIS are confused about the degree to which their respective FOIA responsibilities overlap and where responsibility lies within DHS.  Ms. Stump states:

> With the merger of the various agencies into DHS, I have found that difficulties still remain in accomplishing the desired unification of disparate offices and functional processes.  The arrangement between the Office of Border Patrol and CIS/DHS has caused delays and confusion in the processing of such Office of Border Patrol initial FOIA requests while I was the FOIA Appeals Officer.  *It was never clear to me precisely how a FOIA request sent to the Office of Border Patrol would be processed by CIS* since the responsive records would be under the Office of Border Patrol's control.

Stump Decl. ¶ 11 (emphasis added); see also Ortiz Decl. ¶ 2 ("[CIS] processes FOIA requests received by [USBP], an agency within [CBP], through a reimbursable agreement between USBP and USCIS."); Withnell Decl. ¶ 5 ("[CIS] processes initial FOIA requests for the Border Patrol and thus was primarily responsible for handling [plaintiff's] request.").

Ms. Stump's statement suggests that the various defendant agencies appear to be confused about whether CIS is in fact responsible for processing FOIA requests sent to USBP and CBP.  If various agencies within DHS do not clearly understand the scope of their respective responsibilities for FOIA searches, and they do nothing to resolve this confusion, it is difficult for a court to conclude that those agencies conducted adequate searches as required by the FOIA.  This ambiguity in conjunction with the lack of detail in the agencies' declarations leads the Court

to conclude that the defendant agencies have not met their burden to show that their searches were adequate. See Friends of Blackwater v. Dep't of Interior, 391 F. Supp. 2d at 120-21. The agencies therefore may need to conduct further or additional searches and certainly must supplement the supporting declarations regarding the adequacy of their searches. See Judicial Watch, Inc. v. Dep't of Justice, 185 F. Supp. 2d at 65 ("when an agency's affidavits or declarations are deficient regarding the adequacy of its search . . . the courts generally will request that the agency supplement its supporting declarations.") (citing Nation Magazine, Washington Bureau v. United States Customs Service, 71 F.3d 885, 892 (D.C. Cir. 1995); Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

## IV. CONCLUSION

For the reasons explained above, the Court determines that defendants' Vaughn Index and accompanying declarations are legally insufficient for it to conclude either that defendants have met their obligations under the FOIA or that plaintiff is entitled to a judgment in its favor. Accordingly, defendants must amend or supplement the Vaughn Index and accompanying declarations as described above. An Order accompanying this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 11, 2009